UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SALLY WADE,                          :
    Plaintiff,                   :
                                 :
v.                                   :     Case No. 3:16-cv-2041(RNC)
                                 :
ELECTRIC BOAT CORP.,                 :
    Defendant.                   :

RULING AND ORDER

Plaintiff Sally Wade brings this action against her former employer, Electric Boat Corporation ("Electric Boat"), for discrimination on the basis of her religion and her perceived disability in violation of Title VII of the Civil Rights Act, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the Connecticut Fair Employment Practices Act ("CFEPA"). Defendant moves for summary judgment. Oral arguments on the motion were conducted on April 29, 2019. For reasons discussed below, defendant's motion is granted.

I.    Background

The undisputed facts are as follows. Electric Boat, which designs and builds nuclear submarines for the U.S. government, hired plaintiff in 1990. As of February 2016, she and her husband, Daniel Wade, were both employed with Electric Boat as Structural Design Senior Specialists. Plaintiff required a security clearance at the "secret" level.

1

The Naval Undersea Warfare Center ("NUWC") is the U.S. Navy's research and development center for submarines and similar systems. NWUC has a division in Newport, Rhode Island. On February 24, 2016, Mr. Wade sent an email to Brandon Schopflin, a NUWC employee, and copied plaintiff on the email. The email stated in relevant part:

> I spoke with some coworkers here at Electric Boat to get your contact information.
> I called you on 2/9/16, I had some questions for you regarding pulsed electromagnetic radio frequencies.
> My Wife Sally Wade and I have worked at Electric Boat Corp for the past 26 years and 21 years. We are both Structural Senior Design and Senior Specialists. We are hard working dedicated employees.
> On Sunday[,] January 31st[,] 2016 we both experienced very powerful pulsed microwave frequencies and have been bombarded with them ever since. We are now dreadfully aware and educated of the [e]ffects of Radio Frequencies [("RF")] used in weaponry. We have had many physical ailments from the RF.
> We want to know what we can do to protect ourselves from the frequencies and how it came to be that we are targeted with these sophisticated weapons.

Mr. Wade provided contact information for himself and plaintiff.

On February 26, Schopflin forwarded the email to two other NWUC employees, Carlos Lopes and Robert Gregory. Gregory forwarded the email to additional NWUC employees, writing that Mr. Wade's email raised "the sort of statements/concerns that the [Washington Navy Yard] shooter had while in Newport." One of the recipients forwarded it to Stephen White, an Electric Boat employee, who circulated it to security personnel at Electric Boat. Electric Boat's Manager of Security, Kyle

2

Snurkowski, noted in an email, "We need to take some quick action I think with these two people." While the comparison to the Washington Navy Yard shooter was first raised by a NWUC employee, it was also a concern for Electric Boat Director of Security Vincent Lisi, who had investigated that mass-shooting incident while employed with the Federal Bureau of Investigation.[1]

Lisi ordered Louis Heller to commence a security investigation on February 26, 2016. Plaintiff does not dispute that Electric Boat had a duty to investigate the Navy's concerns regarding Mr. Wade's email. Lisi also had plaintiff and Mr. Wade's security badges disabled so they could not access the facility. Plaintiff was placed on unpaid leave the next day.

Heller interviewed several witnesses between February 26 and 29, including plaintiff and her husband. Plaintiff stated in her interview that she and her husband

> think that we are being followed by vehicles without registration plate lights or obscured registration plates. We feel that [our former neighbor] is using RF on us. Twice, I've thought that I might have felt these RF while at work. I later dismissed my feeling and attributed it to nearby machines or a train going by. I have many health

---

[1] Plaintiff indicates that she lacks sufficient information to agree or disagree with defendant's statement, supported by Lisi's affidavit, of this fact. Plaintiff has not provided any evidence contradicting this statement and it is supported by the record. Accordingly, it is deemed admitted. D. Conn. L. Civ. R. 56(a)(3); see N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 649 (2d Cir. 2005).

issues that I feel are attributed to [my former neighbor's] actions.

Electric Boat Medical Director Dr. Robert Hurley interviewed plaintiff and her husband on February 29, 2016. Dr. Hurley noted that plaintiff claimed to be subjected to electromagnetic pulse waves, manifesting in physical symptoms, and that she and her husband had purchased an RF detector. In Dr. Hurley's view, plaintiff's thought process was not logical, her judgment and insight were poor, and she showed signs of paranoia and delusions. Plaintiff told Dr. Hurley that she was not open to counseling, did not believe in medical science, and was very religious. Dr. Hurley told plaintiff she would need to undergo a psychiatric evaluation to determine whether she suffered from a treatable condition resulting in paranoia and delusions. Plaintiff agreed to surrender her badge and submit to an evaluation by a company-appointed psychiatrist.

Drs. Jamison Rogers and Wade Myers, who are not employed by Electric Boat, evaluated plaintiff on August 9, 2016. Dr. Rogers additionally interviewed plaintiff by phone on August 26, 2016. The evaluators issued a report on October 4, 2016, diagnosing plaintiff with Generalized Anxiety Disorder and Major Depressive Disorder, Recurrent Episode, Mild. They determined that plaintiff could perform the essential functions of her job. However, they issued several recommendations for treatment and

indicated that two would be required for plaintiff to be medically cleared to return to work: treatment with a psychotherapist and treatment with a general adult psychiatrist. They specified that plaintiff should be permitted time off to attend outpatient mental health appointments during the week.

Dr. Hurley discussed the report and its conclusions with plaintiff around October 21. Plaintiff ultimately refused the required treatment, saying it went against her religious beliefs. She initiated this lawsuit in December 2016.

In May 2017, plaintiff sent a letter to Senior Manager of Human Resources Douglas Baker requesting that she be permitted to meet with a pastor for "spiritual counseling" as opposed to treating with a psychiatrist. After receiving no response, plaintiff submitted her resignation on July 21, 2017.

On September 21, 2017, counsel for Electric Boat sent a letter to plaintiff's counsel. The letter stated that after plaintiff's May 2017 letter, Electric Boat reached out to Dr. Rogers, who indicated that counseling with a pastor was insufficient. Rather, psychotherapy with a licensed provider remained a requirement. However, defendant's letter noted that Dr. Rogers had removed the additional requirement of treatment with a psychiatrist and that Dr. Rogers had suggested a faith-based psychotherapy practice, Charis Counseling Centers ("Charis"), and indicated that treatment with that practice

would satisfy the requirement.  Electric Boat reiterated this offer and/or asked for alternative proposals on October 20, 2017; November 6, 2017; January 16, 2018; January 25, 2018; February 1, 2018; and February 5, 2018.  Plaintiff's counsel responded on October 20, 2017 and February 5, 2018, rejecting the offer of counseling at Charis without explanation.  Accordingly, plaintiff was never medically cleared to return to work at Electric Boat.

II.  Legal Standard

    "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).  The non-moving party may defeat summary judgment by pointing to a genuine dispute of material fact, but may not do so through conclusory allegations, unsubstantiated speculation, or inadmissible evidence.  See F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010); Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position" is not enough to prevent summary judgment.  Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986).

III. <u>Discussion</u>

The complaint is not a model of clarity as to the nature of the claims asserted, but plaintiff appears to assert: (1) discrimination on the basis of religion in violation of Title VII and the CFEPA; (2) discrimination on the basis of perceived disability in violation of the ADA, RA, and CFEPA; (3) retaliation for "supporting her husband" and for "opposing unlawful employment practices" in violation of the CFEPA; (4) intentional infliction of emotional distress; and (5) violation of the Connecticut public policy favoring marriage. The complaint alleges two adverse employment actions by Electric Boat: (a) placing plaintiff on unpaid leave on February 27, 2016 and (b) refusing to reinstate her unless she submitted to the required treatment.[2]

_____

[2] Plaintiff attempts to allege additional adverse employment actions in her response to defendant's motion for summary judgment. Plaintiff may not raise new claims in her responsive briefing. <u>See</u> <u>Greenidge v. Allstate Ins. Co.</u>, 446 F.3d 356, 361 (2d Cir. 2006) (upholding the district court's decision not to consider an argument raised for the first time in the party's opposition to summary judgment because "a district court does not abuse its discretion when it fails to grant leave to amend a complaint without being asked to do so"); 5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1183 n.9 (3d ed. 2004) ("An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims."). The complaint raises only the two adverse employment actions named above. The complaint also states that "defendant's aforesaid actions constituted a termination of the plaintiff's employment because of her husband, through no fault of her own." However, on the date of the complaint, December 13, 2016, plaintiff had been placed on leave, not terminated. Accordingly, this

a. <u>Religious Discrimination</u>

Title VII forbids employment discrimination "because of" an individual's religion.  42 U.S.C. § 2000e-2(a).  "It is axiomatic that mistreatment at work, . . . [including] through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs <u>because of</u> an employee's . . . protected characteristic."  <u>Brown v. Henderson</u>, 257 F.3d 246, 252 (2d Cir. 2001) (emphasis added) (citing <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 79-80 (1998)).  <u>E.g.</u>, <u>Valenzisi v. Stamford Bd. of Educ.</u>, 948 F. Supp. 2d 227, 238 n.9 (D. Conn. 2013).

To establish a <u>prima facie</u> case of discrimination under Title VII, the plaintiff "must show that: 1) [she] belonged to a protected class; 2) [she] was qualified for the position; 3) [she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  <u>Terry v. Ashcroft</u>, 336 F.3d 128, 138 (2d Cir. 2003); <u>see also</u> <u>Cutler v. Stop & Shop Supermarket Co.</u>, 513 F. App'x 81, 82 (2d Cir. 2013) (citing <u>Terry</u> in the context of religious discrimination).  The same standard applies under the CFEPA.  <u>Kaytor v. Elec. Boat Corp.</u>,

---

reference to "termination" can only be a reference to the two allegedly adverse employment actions already described.

609 F.3d 537, 556 (2d Cir. 2010) (citing <u>Craine v. Trinity</u> <u>Coll.</u>, 791 A.2d 518, 531 (Conn. 2002)).

Defendant does not contest that plaintiff satisfies the first three requirements, at least as to the two adverse employment actions stated above. However, defendant disputes that plaintiff can establish that either adverse employment action "occurred under circumstances giving rise to an inference of discriminatory intent." <u>Terry</u>, 336 F.3d at 138. To satisfy this prong, an employee can produce evidence showing that the employee was treated "less favorably than a similarly situated employee outside [her] protected group." <u>Ruiz v. Cty. of</u> <u>Rockland</u>, 609 F.3d 486, 493 (2d Cir. 2010) (quoting <u>Mandell v.</u> <u>Cty. of Suffolk</u>, 316 F.3d 368, 379 (2d Cir. 2003)). However, plaintiff has not alleged, nor does the record reveal, any facts demonstrating disparate treatment.[3] Accordingly, she must instead satisfy the fourth prong either by "showing that the employer's stated reason for its employment action was pretext to cover-up discrimination, or by otherwise creating a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801

---

[3] For this reason, plaintiff's citation to the discussion of the knowledge requirement in the disparate-treatment case <u>E.E.O.C.</u> <u>v. Abercrombie & Fitch Stores, Inc.</u>, 135 S. Ct. 2028, 2032 (2015), is inapposite.

F.3d 72, 87 (2d Cir. 2015) (citations omitted).  Because plaintiff has failed to raise a genuine dispute of material fact on this point, defendant is entitled to summary judgment.

Plaintiff concedes that Lisi had no knowledge of her religious beliefs when he had plaintiff's security badge disabled, instructed Heller to commence an investigation, and referred plaintiff to Dr. Hurley for an evaluation.  She has not adduced any evidence suggesting that any other initial decisionmaker had knowledge of her religious beliefs. Accordingly, the first adverse employment action – placing plaintiff on unpaid leave on February 27, 2016 – did not "occur[] under circumstances giving rise to an inference of discriminatory intent" on the basis of plaintiff's religion. Terry, 336 F.3d at 138.

Plaintiff's argument regarding the other adverse employment action, the refusal to reinstate her unless she submitted to the required treatment, requires more comment but is similarly unavailing.  Plaintiff made Dr. Hurley aware during the February 29, 2016 evaluation that she was very religious, did not believe in medical science, and was not open to counseling.  Dr. Hurley nevertheless ordered a psychiatric evaluation.  However, plaintiff admitted during her deposition that she had no evidence that Dr. Hurley harbored negative feelings toward her because of her religious beliefs, though she stated that Dr.

Hurley "violated [her] religious beliefs . . . just by sending

me to the doctor."  With no evidence that Dr. Hurley's

motivation in doing so was <u>because of</u> her religious beliefs,

plaintiff cannot substantiate a <u>prima facie</u> case of religious

discrimination.  Even if she could, however, her claim would

still have to survive the burden-shifting framework of <u>McDonnell</u>

<u>Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

> Under that framework, a plaintiff must first establish a
> <u>prima facie</u> case of discrimination, which causes the burden
> of production to shift to the defendant to offer a
> legitimate, nondiscriminatory rationale for its actions.
> If the defendant satisfies its burden of production, then
> the presumption raised by the <u>prima facie</u> case is rebutted
> and drops from the case, such that at the final stage, the
> plaintiff then has the opportunity to demonstrate that the
> proffered reason was not the true reason for the employment
> decision.

<u>Kovaco v. Rockbestos-Surprenant Cable Corp.</u>, 834 F.3d 128, 136

(2d Cir. 2016) (alterations, internal quotation marks, and

footnote markers omitted).  Here, defendant has raised a

plausible nondiscriminatory rationale for Dr. Hurley's decision

to refer plaintiff for a psychiatric evaluation: her statements

during his evaluation of her made him concerned that she was

paranoid and delusional.  As plaintiff has conceded, Electric

Boat is subject to national security requirements due to the

sensitive nature of its work, and plaintiff had a security

clearance at the "secret" level.  According to defendant, Dr.

Hurley's decision was motivated by concerns about plaintiff's

statements to him.  Therefore, even if plaintiff could make a
prima facie case for discrimination, the burden would shift back
to her "to demonstrate that the proffered reason was not the
true reason for the employment decision." Id.  Plaintiff has
offered no evidence tending to suggest that Dr. Hurley's true
motivation was religious discrimination.

Nor can she show that Drs. Rogers or Myers sought to
discriminate against her when they ordered treatment with a
psychotherapist and psychiatrist as a condition of her return to
work.  Plaintiff concedes that she has no evidence that Drs.
Rogers or Myers harbored any bias toward her due to her religion
or were influenced by her religion at all in forming their
diagnoses and evaluation.

Finally, at oral argument and in the briefing, plaintiff
contends that she should have been permitted to attend
counseling with a pastor instead of a psychotherapist.  The
parties do not dispute that beginning in September 2017,
defendant told plaintiff that counseling with a pastor would be
insufficient and that she would need to be seen by a
psychotherapist, but that a faith-based psychotherapy practice
such as Charis was an option.  Plaintiff rejected that offer
without explanation, and did not provide any alternative
proposals even when pressed repeatedly, other than her initial

suggestion of counseling with a pastor.[4]  Again, plaintiff

provides no evidence from which a jury could reasonably infer

discrimination on the basis of religion.  Furthermore, even if

she could make out a prima facie case, defendant has provided a

legitimate, nondiscriminatory rationale: it relied on the

professional advice and opinions of Drs. Rogers and Myers, who

asserted that plaintiff needed to attend counseling with a

licensed psychotherapist in order to be medically cleared to

return to work.  In doing so, defendant sought to be sensitive

to plaintiff's religious views by noting a faith-based

psychotherapy practice she could attend.  Plaintiff has offered

no evidence to suggest that this rationale was pretextual.

There is no evidence from which a jury could reasonably

infer that defendant discriminated against plaintiff based on

her religion, and there are no genuine disputes of material fact

---

[4] Plaintiff clarified in her April 5, 2018 deposition that her
opposition to Charis arose from her research of their website.
She found that the personnel at the locations closest to her
house lived personal lives with which she disagreed and that
they appeared oriented toward Catholicism, which did not comport
with her beliefs.  She also said that the Charis location that
most closely aligned with her faith was over an hour away.
However, she does not dispute that she never communicated these
concerns to Electric Boat during the period in question.  This
is significant in part because the failure to provide an
alternative to the purportedly Catholic services offered by
Charis was the primary evidence of discriminatory intent
identified by plaintiff's counsel at oral argument.

for a jury to resolve.  Defendant is entitled to summary judgment on this claim.

      b. <u>Perceived Disability Discrimination</u>

The ADA forbids employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The CFEPA contains comparable language.  Conn. Gen. Stat. § 46a-60(b)(1).  The RA mandates that employers receiving federal financial assistance not discriminate against an "otherwise qualified individual with a disability . . . solely by reason of her or his disability."  29 U.S.C. § 794(a).[5]

---

[5] However, the RA also requires that courts use the same standards "to determine whether this section has been violated in a complaint alleging employment discrimination" as under the ADA.  29 U.S.C. § 794(d).  The discrepancy between the "solely because of" standard of § 794(a) and the lower ADA standard for employment cases under § 794(d) has created some confusion.  The Second Circuit recently held that in employment discrimination RA cases, the ADA's causation standard applies.  <u>Natofsky v. City of New York</u>, No. 17-2757, 2019 WL 1715951, at *5 (2d Cir. Apr. 18, 2019).  The Second Circuit also clarified what the ADA standard is, holding that the ADA uses a "but-for" causation standard, rather than the "mixed-motive" test previously employed in this Circuit.  <u>Id.</u> at *6-9.  Accordingly, "a plaintiff alleging an employment discrimination claim under" either the ADA or RA "must show that the plaintiff's disability was a but-for cause of the employer's action, not the sole cause."  <u>Id.</u> at *1.

Under the ADA, the term "disability" includes "a physical or mental impairment that substantially limits one or more major life activities," as well as "being regarded as having such an impairment." 42 U.S.C. § 12102(1). The RA incorporates the ADA's definition of disability. 29 U.S.C. § 705(20)(B). The CFEPA includes in the definition of "mental disability" being "regarded as having one or more mental disorders." Conn. Gen. Stat. § 46a-51(20). The CFEPA definition is broader than that under the ADA and RA because it does not include a "substantially limits" requirement. See Beason v. United Techs. Corp., 337 F.3d 271, 277 (2d Cir. 2003).

Courts analyzing claims of intentional discrimination under the ADA, RA, and CFEPA employ the McDonnell Douglas burden-shifting framework. See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48 (2d Cir. 2002) (ADA and RA), superseded by statute on other grounds; Stoffan v. S. New Eng. Tel. Co., 4 F. Supp. 3d 364, 373 (D. Conn. 2014) (ADA and CFEPA). The plaintiff must first establish a prima facie case of discrimination. Reg'l Econ., 294 F.3d at 49.

> [T]o establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.

15

McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013)
(emphasis added) (quoting Sista v. CDC Ixis N. Am., Inc., 445
F.3d 161, 169 (2d Cir. 2006)).  If the plaintiff satisfies the
prima facie burden, then the burden shifts under the McDonnell
Douglas framework laid out above.  Reg'l Econ., 294 F.3d at 49.

Defendant does not disagree that plaintiff can satisfy the
first or third McMillan factors, but it disputes that she can
fulfill the second and fourth factors.  Defendant argues, first,
that plaintiff cannot make a prima facie case for discrimination
under the ADA or RA because she has not shown that defendant
regarded her as disabled within the meaning of the ADA.[6]  The
parties agree that the "major life activity" impacted by
plaintiff's perceived disability is the ability to work.  See 29
C.F.R. § 1630.2(i)(1)(i).  Defendant argues that plaintiff
cannot show that defendant perceived her as unable to work to a
significant enough degree to satisfy the ADA.  In support of
this claim, defendant cites Graham v. Boehringer Ingelheim
Pharm., Inc., 451 F. Supp. 2d 360 (D. Conn. 2006).

Defendants fail to recognize, however, that Graham predates
the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat.
3553 (2008).  That Act added "[r]ules of construction regarding

---

[6] Defendant's argument on this point hinges on the ADA's
"substantially limits" requirement, and therefore does not apply
to the CFEPA claim.

the definition of disability" to the ADA, including that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). Furthermore, "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." Id. § 12102(4)(E)(i). With those requirements in mind, and construing the facts in the light most favorable to plaintiff, both alleged adverse employment actions suggest that defendant regarded plaintiff as unable to work without mitigating measures. Accordingly, plaintiff has satisfied the first three McMillan factors for all three statutes.

To make out a prima facie case, however, plaintiff still must show that she "suffered adverse employment action because of [her] disability." McMillan, 711 F.3d at 125 (emphasis added). In other words, she must show that her "disability was a but-for cause of [defendant's] action." Natofsky, 2019 WL 1715951, at *1; see also Green v. Cellco P'ship, 218 F. Supp. 3d 157, 162-63, 165 (D. Conn. 2016) (applying the ADA standard to a CFEPA claim). "A plaintiff establishes a prima facie case of discrimination by demonstrating that he 'suffered an adverse employment action under circumstances giving rise to an

17

inference of discriminatory intent.'" Cortes v. MTA N.Y.C. Transit, 802 F.3d 226, 231 (2d Cir. 2015) (quoting Maraschiello v. City of Buffalo Police Dep't, 709 F.3d 87, 92 (2d Cir. 2013)).

As for the first adverse action, plaintiff has not cited, and the record does not reveal, any evidence suggesting "circumstances giving rise to an inference of discriminatory intent." Id. Rather, the record shows that the decision to place plaintiff on unpaid leave was made out of concern for security – a concern that was first raised by personnel at NWUC, not defendant's employees. At her deposition, plaintiff agreed with the statements that "Electric Boat, being a defense contractor, would have a duty to investigate when the Navy passe[d] on to [Electric Boat] their concerns about [plaintiff's husband's] email and what it potentially might mean" and that "Electric Boat had a legitimate reason to investigate this." There is no evidence to suggest that defendant previously regarded plaintiff as disabled or that they made this decision because of her perceived disability. Even if the Court were to infer discrimination on the basis that it was plaintiff's husband, not plaintiff, who wrote the email, defendant has provided a legitimate, non-discriminatory rationale: the stated security concerns. Plaintiff has failed to meet her burden to show that this reason is mere pretext. Kovaco, 834 F.3d at 136.

At oral argument, plaintiff's counsel argued that the "very abrupt" manner in which Lisi placed plaintiff on unpaid leave was evidence that would permit a factfinder to infer discriminatory intent. Given plaintiff's concession that defendant had a legitimate reason, and, indeed, a duty, to investigate the email as it related to plaintiff, no reasonable juror could conclude that the haste with which defendant investigated, or the precautionary measures defendant took while investigating, were evidence of discriminatory intent.

Nor is there a triable issue of fact on this point. Other than the fact that it was her husband who wrote the email, the only evidence plaintiff cites is an email from Matthew Dignazio on February 26, 2016. Dignazio is, according to his email signature, an Engineering Specialist. He noted that plaintiff's husband was having issues with a neighbor and concluded that "[t]here is no risk at work." A non-security employee's statement that defendant's husband did not pose a risk is insufficient to create a triable issue of fact that the security personnel's decision to place plaintiff on leave was motivated not by their own and NWUC's security concerns, but rather by a desire to discriminate against her based on her perceived disability. The causal chain is too attenuated.

As for second adverse employment decision, requiring plaintiff to submit to psychotherapy before returning to work,

the Court arguably could infer that defendant required her to submit to psychotherapy because of her perceived disability. Yet defendant has provided a legitimate, non-discriminatory rationale for this action: it was deferring to the judgment of mental health professionals, who were not Electric Boat employees. "Any reasonable company would be concerned about its own exposure to liability . . . should it choose to overrule an independent mental health expert whom the company asked to perform a fitness for duty evaluation of a company employee." Graham, 451 F. Supp. 2d at 369. Plaintiff has not provided any evidence suggesting that the proffered reason is pretextual. Kovaco, 834 F.3d at 136.

Because plaintiff has not met her burden to establish perceived disability discrimination under the ADA, RA, or CFEPA, defendant's motion for summary judgment is granted as to those claims.

### c. Retaliation

The complaint alleges that defendant retaliated against plaintiff "for supporting her husband," but does not specify how plaintiff supported her husband, how defendant retaliated against her, or under what statute plaintiff brings this claim. The complaint also alleges that defendant retaliated against her "for opposing unlawful employment practices" in violation of the CFEPA. Plaintiff claims in her opposition to summary judgment

20

that these claims were brought under both Title VII and the

CFEPA.  In fairness to both parties, I will treat the claims as

being raised under both statutes but will also treat defendant's

motion as moving for summary judgment under either statute.[7]

A prima facie case of retaliation under either Title VII or

the CFEPA requires plaintiff to establish four elements:

"(1) participation in a protected activity; (2) that the

defendant knew of the protected activity; (3) an adverse

employment action; and (4) a causal connection between the

protected activity and the adverse employment action."  McMenemy

v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001) (Title

VII); see also Ayantola v. Bd. of Trs. of Tech. Colls., 976 A.2d

784, 788 (Conn. App. Ct. 2009) (quoting McMenemy, 241 F.3d at

282-83) (CFEPA).

Under Title VII, it is "unlawful for an employer to

retaliate against an individual because she 'opposed any

practice' made unlawful by Title VII . . . [or] because she

'made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under' Title

_____

[7] Defendant's arguments, which relate to the CFEPA, are equally
applicable to Title VII, because "[t]he standards governing
. . . retaliation . . . under CFEPA are the same as those
governing Title VII."  Martinez v. State of Conn., State
Library, 817 F. Supp. 2d 28, 55 (D. Conn. 2011) (citing State v.
Comm'n on Human Rights & Opportunities, 559 A.2d 1120 (Conn.
1989)) (other citations omitted).

VII." <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 316 (2d

Cir. 2015); <u>see also</u> <u>Martinez v. Premier Maint., Inc.</u>, 197 A.3d

919, 937 (Conn. App. Ct. 2018) (noting that under the CFEPA,

"[t]he term protected activity refers to action taken to protest

or oppose statutorily prohibited discrimination" (quoting

<u>Jarrell v. Hosp. for Special Care</u>, 626 F. App'x 308, 311 (2d

Cir. 2015))).  The complaint alleges that plaintiff engaged in

the protected activities of "supporting her husband" and

"opposing unlawful employment practices."  Plaintiff states in

her opposition papers that her retaliation claim relates to the

"protected activity" of opposing discriminatory employment

practices against her husband.  Plaintiff provides no further

detail as to how she allegedly opposed discriminatory employment

practices against her husband or even what those allegedly

discriminatory employment practices were.  Plaintiff's

retaliation claim fails as a matter of law because she has not

met her <u>prima facie</u> burden.[8]

_____

[8] The complaint could arguably be interpreted to suggest that
defendant retaliated against plaintiff for filing her CHRO
complaint.  However, plaintiff does not make that argument with
regard to either of the alleged adverse actions described in the
complaint.  Her opposition papers open the section on
retaliation by stating that she "claims retaliation for opposing
a discriminatory employment practice against her husband."
Buried later in the section is a claim that "[t]he unreasonably
long time-line of the defendant's fitness for duty process is
evidence of [Electric Boat]'s intent to retaliate against the
plaintiff after she filed her CHRO complaint in July, 2016."  As
noted above, plaintiff cannot raise a new alleged adverse

d. Remaining State-Law Claims

Because the Court grants summary judgment to defendant on all of plaintiff's federal claims, the Court has discretion over whether to exercise supplemental jurisdiction over the remaining state-law claims. See 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (citation omitted) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). These factors will usually "point toward declining to exercise jurisdiction over the remaining state-law claims." Id. (quoting Cohill, 484 U.S. at 350 n.7). In this case, however, all four factors tip the balance toward exercising supplemental jurisdiction. Because the claims can be easily dismissed, judicial economy and convenience point toward exercising jurisdiction. Because one of the claims has been abandoned, fairness to defendant counsels

---

employment action in her opposition to summary judgment. Even if she could, the proposed causality is unpersuasive. By her own admission, plaintiff did not provide HIPAA authorization until May 2016; she filed her CHRO complaint on July 25, 2016; and the fitness for duty evaluation occurred on August 9 and 26, 2016. In other words, plaintiff claims that defendant caused an unreasonable delay in her fitness-for-duty evaluation in retaliation for her CHRO complaint, but the evaluation commenced fifteen days after she filed the complaint. Her argument is untenable.

in favor of resolving the claim now.  Finally, because the
remaining claim does not raise novel issues of state law,
principles of comity do not necessitate declining jurisdiction.

First, the complaint alleges that defendant's actions
constituted intentional infliction of emotional distress.  This
claim is untenable because plaintiff has not identified any
conduct that qualifies as "extreme and outrageous."  E.g.,
Appleton v. Bd. of Educ. of Town of Stonington, 757 A.2d 1059,
1063 (Conn. 2000) (holding that summary judgment for defendants
was appropriate on intentional infliction of emotional distress
claim where defendants made condescending comments, had police
escort plaintiff from the property, subjected her to two
psychiatric examinations, forced her to take a suspension and
leave of absence, and forced her to resign).  "As the
defendant['s] actions in the present case were not so atrocious
as to exceed all bounds usually tolerated by decent society,
[its] conduct is insufficient to form the basis of an action for
intentional infliction of emotional distress."  Id.

Plaintiff did not respond to defendant's arguments on this
point in her opposition papers, but instead only responded in a
sur-reply after defendant argued that she had abandoned the
claim.  The sur-reply argues that where there are issues of
material fact concerning illegal discrimination, "the common law
tort claim should remain in the case for the fact-finder to

consider." For reasons discussed above, there are no disputes of material fact related to plaintiff's discrimination claims. Even if there were, "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." Id. at 1062 (citation omitted) (citing Bell v. Bd. of Educ., 739 A.2d 321 (Conn. App. Ct. 1999)). Plaintiff's purported citation to the contrary does not support her point; rather, in that case, the court held at the motion to dismiss stage that an intentional infliction of emotional distress claim remained plausible. Khedr v. IHOP Rests., LLC, 197 F. Supp. 3d 384, 388 (D. Conn. 2016). That does not change the fact that this is initially a question for the Court. The conduct that plaintiff alleges to be outrageous plainly does not rise to the level of creating a question for the jury.

Second, the complaint alleges that "defendant's aforesaid actions constituted a termination of the plaintiff's employment because of her husband, through no fault of her own, in violation of the public policy of the State of Connecticut favoring the institution of marriage." Plaintiff does not elaborate on this claim in any of her papers.

This claim has been abandoned. Defendants moved for summary judgment on the claim; plaintiff failed to respond in

her opposition; defendant argued in its reply that she had abandoned both this claim and the intentional infliction of emotional distress claim; and plaintiff filed a sur-reply arguing only that she has not waived or abandoned the intentional infliction of emotional distress claim, and not mentioning the public-policy claim. "Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended." <u>Jackson v. Fed. Express</u>, 766 F.3d 189, 196 (2d Cir. 2014). I make that conclusion here. Accordingly, defendant is entitled to summary judgment on both of plaintiff's remaining state-law claims.

IV. <u>Conclusion</u>

Defendant's motion for summary judgment is granted. The Clerk may enter judgment and close the file.

So ordered this 30th Day of September, 2019.

_____/s/ RNC_____
Robert N. Chatigny
United States District Judge
